*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re CASTER-CLARK/CLARK/BOWERS-CLARK, MINORS.

UNPUBLISHED
May 19, 2022

No. 358614
Lenawee Circuit Court
Family Division
LC No. 19-000370-NA

Before: JANSEN, P.J., and CAVANAGH and RIORDAN, JJ.

PER CURIAM.

Respondent-mother[1] appeals as of right the order terminating her parental rights to her four children—BLC, BAC, BNC, and BFC—under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist); (g) (the parent failed to provide proper care or custody for the child); and (j) (reasonable likelihood the child would be harmed if returned home). We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Before the present removal, respondent had history with Child Protective Services (CPS) for improper supervision and physical neglect. On August 17, 2019, respondent admitted to a CPS worker that she and her three children were homeless and sleeping in a minivan with her mother and two dogs. After this discovery, emergency removal occurred on September 6, 2019.

On September 9, 2019, petitioner, the Michigan Department of Health and Human Services (DHHS), filed a petition to remove BLC, BAC, and BNC from respondent's care and custody, alleging, under MCL 712A.2(b)(1) and (2), that the children were "subject to a substantial risk of harm to their mental well-being based upon substance abuse, chronic neglect, and lack of housing on part of [respondent]." After a hearing, the trial court found statutory grounds to authorize the petition for removal, stating that the removal was necessary because respondent's drug use was impacting her ability to properly care for her children by preventing her from securing adequate housing and employment.

---

[1] The fathers are not parties to this appeal.

The adjudication occurred on September 26, 2019, and respondent entered admissions to the petition. The trial court found that jurisdiction over the children existed under MCL 712A.2(b)(1) and (2). Initially, all three children were placed together in a foster home; however, the children were subsequently placed in three separate homes.

BFC was born in December 2020. Emergency removal of BFC ensued, and she was placed in an unrelated foster home, separate from her siblings. The trial court assumed jurisdiction over BFC under MCL 712A.2(b)(1) and (2) after respondent pleaded no contest to the removal petition.

On April 25, 2021, DHHS initiated its petition to terminate parental rights to all four children under MCL 712A.19(c)(*i*), (c)(*ii*), (g), and (j). The petition alleged that respondent continued to show minimal progress toward obtaining permanent housing, employment, transportation, and proper outpatient treatment for substance abuse.

Although respondent obtained housing and had maintained sobriety for almost a year, the trial court found that statutory grounds existed under MCL 712A.19b(3)(c)(*i*), (g), and (j) to terminate respondent's parental rights to all four children. The trial court focused on respondent's deficient parenting skills, lack of permanent employment, and her inability to respond to her children's special mental and emotional needs. The trial court also found that it was in the best interests of all four children for parental rights to be terminated because, even though respondent showed love for her children, her lack of appropriate parenting skills had irreparably damaged the bond with her children, and the children's need for permanency and stability favored them remaining in their current foster homes. This appeal followed.

## II. STATUTORY BASES

Respondent contends that statutory grounds did not exist to terminate her parental rights because she made significant progress achieving the goals in her service plan. We disagree.

### A. STANDARD OF REVIEW

A trial court's decision whether a statutory ground under MCL 712A.19b(3) has been proven by clear and convincing evidence is reviewed for clear error. *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). A finding is clearly erroneous if this Court "is left with the definite and firm conviction that a mistake has been made." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (quotation marks and citations omitted). This Court defers "to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

### B. LAW AND ANALYSIS

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App at 32. Respondent's parental rights in this case were terminated under MCL 712A.19b(3)(c)(*i*), (g), and (j).

Under MCL 712A.19b(3)(c)(*i*), the court may terminate parental rights if the court finds by clear and convincing evidence:

> The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial disposition order, and the court, by clear and convincing evidence finds . . . [t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The children were removed in two phases; first, the three older children were removed on an emergency basis on September 6, 2019, and, second, emergency removal of BFC occurred on December 9, 2020. Thus, approximately 24 months and 8 months, respectively, elapsed between removal and termination, meeting this initial time requirement under MCL 712A.19b(b)(c)(*i*).

The conditions that led to removal of the children involved a lack of employment, stable housing, reliable transportation, drug use, and parenting skills. Many of these conditions remained an issue at the time of the termination proceedings. Certainly, respondent made some progress on addressing the concerns that led to removal of her children. At the time of removal, respondent admitted to being homeless and was found sleeping in a van with her children and her mother. Respondent was also regularly using drugs, but denied any addiction problems. In contrast, at the close of proceedings, respondent made progress maintaining sobriety and securing more appropriate housing, which is a significant change from the time the children were removed.

However, respondent showed little progress in other important areas of her service plan, and there were concerns that respondent would be able to rectify the problematic conditions that still existed. The trial court especially focused on the lack of improvement regarding respondent's parenting skills, although she had been provided numerous resources and supports. Respondent's visits with her children were described as "chaotic" at the beginning of the petitioner's involvement and remained that way throughout proceedings. Respondent only attended four of 12 of the initial parenting sessions that she was referred to between October and December 2019. Additionally, respondent showed that she was unable to provide proper supervision to her children. For example, at one visit to a park, respondent was unable to manage the children, and BNC ran into the road. "While [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). In addition, while respondent did participate in a number of the offered service and showed progress on parts of her treatment plan, she "failed to demonstrate sufficient compliance with or benefit from those services specifically targeted to address the primary basis for the adjudication in this matter[.]" *Id*.

Further, respondent repeatedly failed to provide proof of employment and permanent housing. Although, at times, respondent reported working, she had not supplied a paystub or other proof of employment since February 2020. Respondent additionally had not shown any ability to maintain long-term employment. In regards to housing, respondent avoided attempts to inspect her home as recently as the day after the first termination hearing, leaving concerns that the housing was not adequate or appropriate for children.

On appeal, respondent essentially argues that the trial court was premature in terminating her parental rights the children, considering the negative effects the COVID-19 pandemic had on conforming to her service plan. The trial court acknowledged that the pandemic affected some of respondent's progress. Respondent had to take care of her cancer-stricken mother, which made it more difficult to find work that did not place her mother at further risk. Respondent reported that the pandemic also affected her housing prospects and treatment options. However, respondent consistently offered excuses regarding employment, housing, missing parenting time, and drug screenings. It appears that respondent invoking the pandemic is another effort to make excuses for lack of progress. Overall, respondent failed to show significant progress related to her service plan, regardless of any effect that the pandemic had on that plan. Therefore, the trial court did not clearly err by finding that statutory grounds existed to terminate respondent's parental rights under MCL 712A.12b(3)(c)(*i*).

Despite only needing one ground to properly terminate a respondent's parental rights, *In re Ellis*, 294 Mich App at 32, we also note that petitioner has shown multiple grounds for termination. Many of the same reasons already stated also show that statutory grounds were proper for termination under both MCL 712A.19b(3)(g) and (j). Under MCL 712A.19b(3)(g), grounds exist to terminate a respondent's parental rights when, "[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."

Considering proper care and custody for respondent's children necessarily involves recognizing their special emotional needs. Multiple witnesses and the trial court focused on the specific needs of the children, especially BLC and BAC, who suffered from PTSD and other trauma-related issues. The children made significant progress addressing these issues in their foster homes, while parenting time with respondent actually exacerbated their behavioral issues.

Proper care of the children also required continued sobriety from respondent, which was tenuous at the time of termination. Respondent's progress toward sobriety was fairly recent. Especially regarding respondent's refusal to participate in group counseling and her sporadic involvement in individual counseling, respondent's longevity related to her sobriety remained uncertain. The trial court did not clearly err by finding that statutory grounds existed to terminate respondent's parental rights under MCL 712A.12b(3)(g).

Finally, statutory grounds to terminate parental rights exist under MCL 712A.19b(3)(j) when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." As already explained, the deficiencies in parenting skills pose a risk to respondent's children if they were returned to her care. Multiple witnesses testified that respondent's parenting visits were chaotic and unsafe for the children because she was unable to manage them. In one visitation, respondent did not know how to properly fasten BFC into her car seat, and gave up on feeding the infant when it became difficult to do so. Respondent also had trouble staying awake during visits, and would bring inappropriate activities such as "small beads," which would be a choking hazard.

The trial court focused extensively on respondent's inability to properly parent the children, especially in light of the behavioral concerns of BLC and BAC. Over nearly two years of

supervised parenting time, respondent never improved her management of the children, and this became exacerbated when BFC was born and the other children were often left to entertain themselves while respondent cared for the baby. Respondent has not been able to demonstrate that she is able to safely and appropriately parent her children and they remain at a serious risk of harm if returned to her care. The trial court did not clearly err by finding that statutory grounds existed to terminate respondent's parental rights under MCL 712A.12b(3)(j).

Only one statutory ground need be established to terminate parental rights, but petitioner showed three grounds sufficient to terminate respondent's parental rights. *In re Ellis*, 294 Mich App at 32. We are not "left with the definite and firm conviction that a mistake has been made." *In re Williams*, 286 Mich App at 271. The trial court did not clearly err in finding that termination was warranted under MCL 712A.19b(3)(c)(*i*), (g), and (j).

## III. BEST INTERESTS

Respondent argues that the trial court erred in concluding termination of her parental rights were in the children's best interests. We disagree.

## A. STANDARD OF REVIEW

"The clear error standard controls our review of both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest." *In re Williams*, 286 Mich App at 271 (quotation marks and citation omitted); MCR 3.977(K).

## B. LAW AND ANALYSIS

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re LaFrance*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014), citing MCL 712A.19b(5). The best-interests determination must be supported by a preponderance of the evidence. *In re Moss*, 301 Mich App at 83. The trial court may consider the entire record, including evidence introduced by all parties. *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (internal citations omitted).

Respondent contends that the trial court improperly judged respondent using the children's current foster families as the standard. Specifically, respondent argues the children need a "fit" parent, not a "perfect" one. However, respondent has not properly shown that she is able to be a fit parent considering the issues she has providing the children with basic structure during visits. In fact, respondent often failed to show up to visitations on time, causing severe distress to the children to the point where it was suggested terminating visitations.

In making a best interests determination, the focus is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). While the trial court did discuss respondent's lack of parenting skills, it focused on how her parenting related to the individual and

special needs of the children in this case, especially considering the mental health diagnoses of the two older children. As already noted, visits with respondent were chaotic from the beginning and even with extensive assistance, and there was no improvement. The chaotic nature of visits was made even worse when BFC was born, and respondent continued to have trouble managing all of the children during visits.

When considering the best interests of the children, the trial court may also consider a parent's compliance with her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). As already discussed, respondent had, at best, mixed success in complying with her service plan. While she was sober at the time of termination and had obtained housing with the assistance of her mother and brother, she failed to demonstrate that she was capable of maintaining employment and paying for housing without the assistance of her family.

At the time of termination, the children resided in foster families that were committed to providing permanent placement to the children in their care. By all accounts, the children were content in their foster homes, the older children had formed a bond with their foster parents, and the foster homes were able and willing to provide for the special emotional needs of the children.

Many witnesses acknowledged that respondent loved her children, and even that there was a bond between respondent and the children. Respondent also testified at length regarding the bond she felt with her children. However, this bond significantly decreased over time, especially considering the length of time the children spent in foster care. BLC, BAC, and BNC spent nearly two years out of their mother's care, while BFC was in foster care essentially her entire life after being removed only days after her birth.

As a whole, the evidence weighs in favor of the children's best interests being served by termination. Once again, this Court is not left with a "definite and firm conviction that a mistake has been made" in this case. *In re Williams*, 286 Mich App at 271. The trial court did not clearly err when it determined a preponderance of evidence existed that termination was in the best interests of the children.

## IV. CONCLUSION

The trial court did not clearly err by finding that statutory grounds for termination of respondent's parental rights existed under MCL 712A.19b(3) or that termination was in the children's best interests. We affirm.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael J. Riordan